

No. 02-36155

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

RECEIVED
CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

FEB 20 2004
FILED 2-20-04 RY
DOCKETED 2-23-04 RY
DATE          INITIAL

NATIVE VILLAGE OF EYAK,
NATIVE VILLAGE OF TATITLEK,
NATIVE VILLAGE OF CHENEGA,
(aka CHENEGA BAY), NATIVE
VILLAGE OF NANWALEK, NATIVE
VILLAGE OF PORT GRAHAM
Appellants,

v.

DONALD EVANS, Secretary of Commerce,
Defendant-Appellant,

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF ALASKA

## MEMORANDUM IN SUPPORT OF EN BANC REVIEW

Lawrence A. Aschenbrenner
Attorney at Law
601 Vine Street
Anchorage, Alaska 99501
(907) 276-9376

Heather Kendall-Miller
Natalie Landreth
NATIVE AMERICAN RIGHTS FUND
Anchorage, Alaska 99501
(907) 276-0680

Goriune Dudukgian
James J. Davis, Jr.
ALASKA LEGAL SERVICES
CORPORATION
1016 West Sixth Avenue, Suite 200
(907) 279-7417
*Attorneys for Appellants*

Carol E. Daniel
Attorney at Law
8141 Alatna Avenue
Anchorage, Alaska 99507
(907) 529-6651
*Of Counsel*

February 19, 2004

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

REASONS FOR GRANTING HEARING EN BANC . . . . . . . . . . . . . . . . . . . . -4-

    I.      THE *EYAK I* DECISION IS IN DIRECT CONFLICT WITH
           *GAMBELL III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

    II.     THE EXTRAORDINARY IMPORTANCE OF THIS CASE
           UNDERSCORES THE NEED FOR HEARING EN BANC. . . . -15-

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alaska v. Native Village of Venetie,*
522 U.S. 520 (1998) ........................................................ 12

*Amoco Product Co. v. Gambell,*
480 U.S. 531 (1987) ................................................... 1, 3, 8

*Antonia v. Wards Cove Packing Co.,*
810 F.2d 1477 (9th Cir. 1987), *cert. denied,* 485 U.S. 989 (1988) ............ 15

*Cherokee v. Georgia,*
30 U.S. 1 (1831) ........................................................... 11

*County of Oneida v. Oneida Indian Nation,*
470 U.S. 226 (1985) ........................................................ 6

*Cramer v. United States,*
261 U.S. 219 (1923) ........................................................ 6

*Gambell v. Babbitt,*
999 F.2d 403 (9th Cir. 1993) .......................................... 1, 6, 9

*Gambell v. Clark,*
746 F.2d 572 (9th Cir. 1984) ................................. 1, 2, 5, 7, 8, 9

*Gambell v. Hodel,*
774 F.2d 1414 (9th Cir. 1985) .......................................... 1, 5

*Hart v. Massanari,*
266 F.3d 1155 (9th Cir. 2001) .............................................. 6

*Holden v. Joy,*
84 U.S. (17 Wall.) 211 (1872) .............................................. 5

*Inupiat Community of the Arctic Slope v. United States,*
548 F. Supp. 182 (D. Alaska 1982), *aff'd,* 746 F.2d 570 ...................... 8

*Jeffries v. Wood,*
 114 F.3d 1484 (9th Cir. 1997) ................................................... 6

*Johnson v. McIntosh,*
 21 U.S. (8 Wheat.) 543 (1823) ............................................... 6, 11

*Mitchel v. United States,*
 34 U.S. (9 Pet.) 711 (1835) .................................................... 5

*Native Village of Eyak v. Trawler Diane Marie, Inc,*
 154 F.3d 1090 (9th Cir. 1998), *cert. denied,* 527 U.S. 1003 (1999)
 .................................................................. 1, 2, 3, 5, 6, 7, 11

*New York v. United States,*
 505 U.S. 144 (1992) .......................................................... 12

*Nome Eskimo Community v. Babbitt,*
 67 F.3d 813 (9th Cir. 1995) ................................................. 15

*Oneida Indian Nation v. County of Oneida ,*
 414 U.S. 666 (1974) .......................................................... 14

*Parravano v. Babbitt,*
 70 F.3d 539 (9th Cir. 1995) ................................................. 14

*Printz v. United States,*
 521 U.S. 898 (1997) .......................................................... 12

*Santamaria v. Horsley,*
 110 F.3d 1352 (9th Cir. 1997), *rev'd,* 133 F.3d 1242 (9th Cir.), *amended by*
 138 F.3d 1280 (9th Cir.), *cert. denied,* 525 U.S. 823-24 (1998) .................. 6

*Strong v. United States,*
 518 F.2d 556 (Ct. Cl. 1975) ................................................. 9

*Tee-Hit-Ton Indians v. United States,*
 348 U.S. 272 (1955) ..................................................... 5, 10, 11

*United States v. California*,
    332 U.S. 19 (1947) .......................................................... 3, 10, 11

*United States v. Carmack*,
    329 U.S. 230 (1946) .............................................................. 11

*United States v. Johnson*,
    256 F.3d 895 (9th Cir. 2001) ..................................................... 6

*United States v. Louisiana*,
    339 U.S. 699 (1950) ........................................................... 4, 10

*United States v. Maine*,
    420 U.S. 515 (1975) ....................................................... 4, 10, 13

*United States v. Santa Fe Pacific R.R. Co.*,
    314 U.S. 339 (1941) ............................................................ 5, 9

*United States v. Texas*,
    339 U.S. 707 (1950) ........................................................... 4, 10

*Village of Gambell v. Hodel*,
    869 F.2d 1273 (1989) .................................................... 1, 2, 5, 8, 9

*Washington v. Wash. State Commercial Passenger Fishing Vessel Association*,
    443 U.S. 658 (1979) ............................................................... 5

## FEDERAL REGULATIONS

Submerged Lands Act of 1953, 43 U.S.C. §§ 1301-15 ......................................... 13

## LEGISLATIVE HISTORY

D. Rep. No. 411, 83rd Cong., 1st Sess. at 14 (1953) ............................................. 13

H.R. Rep. No. 695, 83rd Cong., 1st Sess.,
    *reprinted in* 1953 U.S.C.C.A.N. 1395, 1411 ................................................. 13

S. Rep. No. 416, 94th Cong., 1st Sess. at 36 (1975) .............................. 14

## MISCELLANEOUS

Andrew P. Richards, Note, *Aboriginal Title Or The Paramountcy Doctrine?*
*Johnson v. McIntosh Flounders In Federal Waters Off Alaska In Native*
*Village of Eyak v. Trawler Diane Marie, Inc.*, 78 Wash. L. Rev. 939
(2003) ............................................................................... 3, 9

Stephen L. Wasby, *Inconsistency in the United States Courts of Appeals:*
*Dimensions and Mechanisms for Resolution*, 32 Vand. L. Rev. 1343
(1979) ................................................................................ 7

Alex Kozinski, *What I Ate For Breakfast And Other Mysteries of Judicial*
*Lawmaking*, 43 Consumer Finance L. Q. Rep., Vol. 4, 254 (Fall 1989) ...... 7

# INTRODUCTION

Appellants Native Village of Eyak, *et al.* respectfully agree with the panel's suggestion that this case be heard initially *en banc*. *En banc* review is necessary to reaffirm the law of this Circuit as announced in *Village of Gambell v. Hodel*, 869 F.2d 1273 (1989) ("*Gambell III*") and reiterated in *Gambell v. Babbitt*, 999 F. 2d 403 (9th Cir. 1993) ("*Gambell IV*"),[1] and to correct the intra-circuit conflict created by the unjustified departure from that law in *Native Village of Eyak v. Trawler Diane Marie, Inc*, 154 F.3d 1090 (9th Cir. 1998) ("*Eyak I*"), *cert. denied*, 527 U.S. 1003 (1999).

The question presented in this case is whether Alaska Native Villages retain aboriginal hunting and fishing rights in the Outer Continental Shelf ("OCS") – rights which, by their very nature, are subordinate to the supreme sovereignty of the United States – without offending the federal government's paramountcy in the OCS. Fifteen years ago this Circuit answered this precise question in *Gambell III*, holding correctly that "the federal government's paramount interests in the OCS do not extinguish the asserted aboriginal [hunting and fishing] rights of [Alaska Native] Villages." *Gambell III*, 869 F.2d at 1277. The Circuit so held

---

[1] *Gambell III* and *Gambell IV* were follow-on decisions to *Gambell v. Clark*, 746 F.2d 572 (9th Cir. 1984) ("*Gambell I*") and *Gambell v. Hodel*, 774 F.2d 1414 (9th Cir. 1985) ("*Gambell II*"), *rev'd sub nom. Amoco Prod. Co. v. Gambell*, 480 U.S. 531 (1987) ("*Amoco*").

because, by the very nature of those rights, the federal government "subordinates . . . aboriginal rights" to the government's "superior interests." *Id. See also, id.* ("aboriginal rights may exist concurrently with a paramount federal interest [in the OCS], without undermining that interest"). In *Gambell IV* this Court reiterated that "[i]n Gambell *III*, we held . . . that the federal government's paramount interests in the [OCS] did not extinguish the aboriginal rights of the villages."

Notwithstanding the clarity of these rulings, ten years later – and directly contrary to *Gambell III* – a different panel of this Court held in *Eyak I* that "the Native Villages' claims [of aboriginal hunting and fishing rights] to the OCS are barred by the federal paramountcy doctrine." *Eyak I*, 154 F.3d at 1097. In so ruling the *Eyak I* panel twice incorrectly characterized the issue presented as one of "first impression" (*id.* at 1091, 1095) because, as it saw it, *Gambell III* did not involve a claim of "*exclusive*" aboriginal rights. *Id.* at 1095 (emph. in original). This was plainly wrong, for the issues presented in the *Gambell* litigation *expressly* concerned "*exclusive* aboriginal right[s] to hunt and fish." *Gambell I*, 746 F.2d at 573 (emph. added). *See also id.* at 574 (describing the nature of the claimed aboriginal rights as "right[s] of *exclusive* use and occupancy") (emph. added). Indeed, in the Supreme Court's intervening *Amoco* decision which led to *Gambell III*, the *Amoco* Court quoted approvingly this Circuit's description of the

-2-

rights at issue as 'exclusive' rights. *Amoco*, 480 U.S. at 536 n. 4. The panel in

*Eyak I* should therefore never have revisited the issues so squarely decided in the

*Gambell* litigation and the Court should now overrule *Eyak I*.[2]

## STATEMENT OF THE CASE

This is the second of two *Eyak* cases to come before this Court. In the first,

the Villages sought to establish their exclusive aboriginal fishing rights in certain

areas of the OCS, and to enjoin the Secretary of Commerce from violating those

rights by authorizing others to fish in those same areas. In ruling that paramount

federal sovereignty in the OCS bars the continuation of exclusive aboriginal

fishing rights, the *Eyak I* panel viewed the issue presented as one of "first

impression," 154 F.3d at 1090, read *Gambell III* as involving only nonexclusive

aboriginal rights, *id.* at 1095, and held that the Villages' claimed exclusive

aboriginal fishing rights were indistinguishable from the title and sovereignty

claims of the several coastal States that were rejected in the Supreme Court's so-

called "paramountcy" cases. *Id.* at 1095, discussing *United States v. California*,

332 U.S. 19 (1947); *United States v. Louisiana*, 339 U.S. 699 (1950); *United*

---

[2] *See* Andrew P. Richards, Note, *Aboriginal Title Or The Paramountcy Doctrine? Johnson v. McIntosh Flounders In Federal Waters Off Alaska In Native Village of Eyak v. Trawler Diane Marie, Inc.*, 78 Wash. L. Rev. 939, 964 n. 251 (2003) ("*Aboriginal Title*") ("[t]he Ninth Circuit can recognize that aboriginal title is consistent with federal sovereignty over the seabed and ocean only by reversing its *Eyak I* decision en banc").

*States v. Texas*, 339 U.S. 707 (1950); *United States v. Maine*, 420 U.S. 515 (1975).

So constrained by *Eyak I*, in 1998 the Villages filed a second case, this time seeking to establish and enforce their *non*-exclusive aboriginal hunting and fishing rights in the OCS. The district court recognized that, although aboriginal rights are usually exclusive rights founded upon aboriginal title, "[a]boriginal hunting and fishing rights can exist without aboriginal title." CR 42 at 21. The court ultimately concluded, however, that "there is no legal difference between an exclusive claim to hunt and fish in the OCS and a non-exclusive claim when it comes to the doctrine of federal paramountcy." CR 42 at 25. The district court therefore dismissed the Villages' assertion of *any* aboriginal fishing rights, exclusive or not, citing the government's paramount interest in the OCS. *Id* at 25. Following a timely appeal, briefing and oral argument, the panel, by Order entered January 30, 2004, directed the parties to address whether this case should be heard initially *en banc*.

## REASONS FOR GRANTING HEARING EN BANC

## I. THE *EYAK I* DECISION IS IN DIRECT CONFLICT WITH *GAMBELL III*

The decision in *Eyak I* is directly contrary to the law of this Circuit as expressed in *Gambell III,* and reiterated in *Gambell IV*. Consideration by the full Court is therefore necessary to secure and maintain uniformity of the Court's

decisions.

Exactly like the appellant Villages here, the *Gambell* Villages claimed "aboriginal subsistence rights in the OCS." *Gambell III*, 869 F.2d at 1275, 1280.[3] Exactly like the appellant Villages here, the *Gambell* Villages were "not asserting a claim of sovereign rights" vis a vis the federal government but a claim to aboriginal hunting and fishing rights. *Id.* at 1276.[4] And exactly like the appellant Villages here, the *Gambell* Villages recognized that their aboriginal rights were "subordinate to and consistent with national interests." *Id.* Finding this argument "persuasive" (*id.*), this Court in *Gambell III* held that subordinate "aboriginal rights may exist concurrently with a paramount federal interest, without

---

[3] *See also Gambell I*, 746 F.2d at 573 ("their aboriginal right to subsistence hunt and fish"); *Gambell II*, 774 F.2d at 1417 ("aboriginal hunting and fishing rights" and " aboriginal right to hunt and fish"). All territories acquired by the United States are subject to aboriginal title, *United States v. Santa Fe Pac. R.R. Co.*, 314 U.S. 339, 346 (1941), and that aboriginal title allows tribes to exploit the natural resources of their land and water territories (subject to defeasance by Congress). *Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 670 n. 15, 687 (1979). Aboriginal rights fall under the protection of federal law as soon as federal jurisdiction is extended to a new territory occupied by Natives. *See, e.g., Holden v. Joy*, 84 U.S. (17 Wall.) 211, 244 (1872) (Florida Cession Treaty); *Mitchel v. United States*, 34 U.S. (9 Pet.) 711 (1835) (Florida Cession Treaty); *Santa Fe*, 314 U.S. at 345-47 (1941) (Mexican Cession Treaty); *Tee-Hit-Ton Indians v. United States*, 348 U.S. 272, 279-85 (1955) (Alaska Cession Treaty).

[4] Here, again, *Eyak I* completely mischaracterized the issue as one involving a "claim to complete control over the OCS." 154 F.3d at 1096.

-5-

undermining that interest." *Id.* at 1277, citing *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 233-36 (1985); *Cramer v. United States*, 261 U.S. 219, 227 (1923); *Johnson v. McIntosh*, 21 U.S. (8 Wheat.) 543, 586 (1823). This Court further held that the "federal government's paramount interests in the OCS do not extinguish the asserted aboriginal rights of the Villages." *Id.* at 1277. This Court acknowledged *Gambell III's* holding on this precise issue in *Gambell IV*. 999 F.2d at 405.

Notwithstanding the clarity of this Court's holdings in the *Gambell* litigation, the *Eyak I* panel rejected the very same claims – claims of exclusive aboriginal hunting and fishing rights in the OCS. In so holding, the *Eyak I* panel defied the principle of *stare decisis*[5] and rejected the core tenet that:

> Circuit law . . . binds all courts within a particular circuit, including the court of appeals itself. Thus, the first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals. Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court sitting en banc, or by the Supreme Court.

*Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001); *see also Santamaria v. Horsley*, 110 F.3d 1352, 1355 (9th Cir. 1997) ("It is settled law that one three-judge panel of this court cannot ordinarily reconsider or overrule the decision of a

---

[5] *See, e.g., United States v. Johnson*, 256 F.3d 895, 914-16 (9th Cir. 2001); *Jeffries v. Wood*, 114 F.3d 1484, 1492-93 (9th Cir. 1997) (*en banc*).

prior panel."), *rev'd*, 133 F.3d 1242 (9th Cir.) (en banc), *amended by* 138 F.3d

1280 (9th Cir.), *cert. denied*, 525 U.S. 823-24 (1998).

"Writing around"[6] this Court's holdings in the *Gambell* cases, the *Eyak I*

panel attempted to distinguish *Gambell III* on the erroneous basis that *Gambell III*

dealt only with "limited assertions of aboriginal subsistence rights," and that

"exclusive rights to use or occupy areas of the OCS were never considered."[7]

*Eyak I*, 154 F.3d at 1095. But that is simply not so. *Gambell I* made perfectly

clear that the "asserted aboriginal right to hunt and fish" (746 F.2d at 573) was "a

right of exclusive use . . . superior to those of third parties" (*id.* at 574):

> Aboriginal title or right is a right of <u>exclusive</u> use and occupancy held
> by Natives in lands and waters used by them and their ancestors prior
> to the assertion of sovereignty over such areas by the United States.

---

[6]  Stephen L. Wasby, *Inconsistency in the United States Courts of Appeals:
Dimensions and Mechanisms for Resolution*, 32 Vand. L. Rev. 1343, 1359 (1979)
(one unidentified Ninth Circuit judge stated that the greatest cause of
inconsistency between panels was a later panel "writing around" an earlier
decision, which occurs when there are "two opposing theories of law where the
judges on each side are trying to avoid the effect of decisions on the other side");
*see also*, Alex Kozinski, *What I Ate For Breakfast And Other Mysteries of Judicial
Lawmaking*, 43 Consumer Finance L. Q. Rep., Vol. 4, 254, 255-56 (Fall 1989)
(judges must deal squarely with precedent and not ignore it or distinguish it on an
insubstantial or trivial basis).

[7]  Even the district court recognized *Eyak I*'s departure from the law of this
Circuit: "The *Eyak I* panel rejected plaintiffs' arguments that the rights that they
were asserting were somehow subordinate to the federal government's rights,
*despite Gambell III's holding that subordinate fishing rights could exist in the
OCS*." CR 42 at 31 (emph. added).

These rights are superior to those of third parties, including the states,
but are subject to the paramount powers of Congress.

*Id.* (emph. added); *see also id.* at 573 (describing appellants claimed "exclusive

aboriginal right to hunt and fish in offshore areas adjacent to Alaska") (emph.

added); *Amoco*, 480 U.S. at 536 n.4 (quoting verbatim the foregoing passage from

*Gambell I*, and citing *County of Oneida*). The panel's effort in *Eyak I* to

distinguish the *Gambell* litigation as not involving "exclusive" rights must

therefore fail.[8]

Equally fatal, the *Eyak I* panel's underlying analysis of subordinate

aboriginal fishing rights in the context of the federal paramountcy doctrine is

wrong and in conflict with *Gambell III* and Supreme Court precedent.[9] In three

---

[8]   *Eyak I* also puts too much weight on this Court's discussion in *Gambell III* of
*Inupiat Community of the Arctic Slope v. United States*, 548 F. Supp. 182 (D.
Alaska 1982), *aff'd* 746 F.2d 570 (9th Cir. 1984). In *Gambell III* this Court
observed that *Inupiat* stands for the proposition that the paramountcy principle
bars all assertions of sovereignty, whether raised by a State or a Tribe. *Gambell
III*, 869 F.2d at 1276. But the *Gambell* Court was quick to add that since
"sovereignty" was not at issue there, but rather hunting and fishing rights,"[t]he
*Inupiat* decision does not control the present case because the Villages are not
asserting a claim of sovereign rights . . . [instead] rights [that] may exist
concurrently with a paramount federal interest." 869 F.2d at 1276 -77.

[9]   Under *Santa Fe*, courts are required to apply a three-step approach to assessing
aboriginal claims. A court's first inquiry is to determine whether the United States
has extended its sovereignty over the land at issue. If it has, the court must then
determine whether any aboriginal right that may have existed was extinguished.
Lastly, the court must determine whether the claimed aboriginal right exists in
fact. *Id.*, 314 U.S. at 346-359. This Court in *Gambell III* closely followed this

-8-

different but related ways the *Eyak I* panel failed to distinguish between the incompatible property or sovereignty rights asserted by the States in the paramountcy cases, and the compatible and subordinate aboriginal subsistence rights asserted here. First, as this Court noted in *Gambell I*:

> [exclusive use and occupancy] rights are superior to those of third parties, including the states, but are subject to the paramount powers of Congress. Aboriginal rights based on occupation and use are entitled to the protection of federal law even where they are not formally recognized as ownership by treaty or statute, but such unrecognized aboriginal rights can be extinguished by Congress without compensation.

746 F.2d at 574, *citing Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 667-69 (1974); *United States v. Santa Fe Pacific R.R.*, 314 U.S. 339, 345 (1941).

This Court in *Gambell I* made clear that the "exclusive" nature of <u>aboriginal</u> rights contemplates exclusivity *vis a vis* third parties[10], not the federal government. This is so because Congress has plenary power over Indian affairs (unlike its authority

---

three-part analysis. 869 F.2d at 1276-80; *see also, Gambell IV*, 999 F.2d at 405; *Aboriginal Title, supra.* at 965 ("in *Gambell III*, the Ninth Circuit closely followed the *Santa Fe* three-part analysis prior to *Eyak I*."). *Eyak I* ignored it altogether.

[10] "Exclusivity" is also the nomenclature used to describe the standard tribes must satisfy *vis a vis* other Native groups in order to prove that a tribe's aboriginal rights existed in fact. *See, e.g. Santa Fe*, 314 U.S. at 359; *see also, Strong v. United States*, 518 F.2d 556, 561-562 (Ct. Cl. 1975) (noting that an exception to this exclusivity requirement is where "two or more tribes or groups might inhabit an area in 'joint and amicable' possession without erasing the 'exclusive' nature of their use and occupancy").

elsewhere) and can thus extinguish aboriginal rights at will and without compensation, *Tee-Hit-Ton Indians v. United States*, 348 U.S. 272, 288-289 (1955). *Id.* at 574. Applying this doctrine, this Court in *Gambell III* understood that aboriginal claims do not conflict with federal paramountcy because by their very nature they are subordinate to federal interests and thus lie completely within the discretion of Congress.

In sharp contrast to aboriginal rights, the rights asserted by the various States in the paramountcy cases were "exclusive" property or sovereignty rights *vis a vis* the United States. *See United States v. California,* 332 U.S. 19 (1947) (asserting absolute state title to marginal submerged lands); *United States v. Louisiana*, 339 U.S. 699 (1950) (asserting absolute state title to submerged lands extending twenty-seven miles off-shore); *United States v. Texas*, 339 U.S. 707, 720 (1950) (asserting absolute state ownership to the outer edge of the continental shelf); *United States v. Maine*, 420 U.S. 515, 517-518 (1975) (asserting absolute rights of dominion and control exclusive of the United States over the OCS seabed in the Atlantic Ocean). Although the *Eyak I* panel correctly noted that the states' claims of ownership and control over the territorial sea and the OCS were rejected because they might interfere with the federal government's external sovereign powers over foreign affairs, foreign commerce, and national defense, 154 F.3d at

1093, it erroneously concluded that the Villages' aboriginal claims here are indistinguishable from the claims of the states.[11] Unlike Congress's plenary power over Indian affairs, Congress possesses no power to extinguish or divest state property rights without just compensation. *See United States v. Carmack*, 329 U.S. 230, 241-43 (1946). Because Congress's power to confiscate state property or encroach on state governing authority is strictly limited by the Constitution, the states' claims of ownership and sovereignty over the territorial sea in the paramountcy cases posed a real and direct threat to the federal government's external powers over foreign relations, commerce, war and peace. Had the states prevailed they, rather than Congress, would have held "the paramount right and power to determine in the first instance when, how, and by what agencies . . . the oil and other resources of . . . the marginal sea . . . [might] be exploited." *California*, 332 U.S. at 29.

 *Eyak I* wrongly interpreted the paramountcy cases as precluding *any* claim whatsoever, even claims that are consistent with federal paramount interests. By

---

[11] Indeed, as one author has noted, "[n]either the national security nor the economic concerns of the paramountcy cases justif[ies] extinguishing aboriginal title because the Court considered those same concerns in its aboriginal title cases and still recognized the tribes' right to exclusively use their territories." *Aboriginal Title*, *supra*, at 939, *citing Tee-Hit-Ton*, 348 U.S. at 279, 289; *Cherokee v. Georgia*, 30 U.S. 1, 17-18 (1831); *Johnson v. McIntosh*, 21 U.S. at 573-74.

seizing on the word 'exclusive' without examining 'exclusive – as to what', the *Eyak I* panel missed the critical distinction between state property and sovereignty rights at issue in the paramountcy cases, and the subordinate tribal aboriginal fishing rights at issue here.

Second, the *Eyak I* panel missed the significance of the fact that there are no constitutional barriers to Congress' power to unilaterally terminate a tribe's aboriginal claims. *See Alaska v. Native Village of Venetie*, 522 U.S. 520 (1998). In sharp contrast, the federal government's authority over the States is expressly limited by the Tenth and Eleventh Amendments, and by the constitutional system of dual sovereignty. *See Printz v. United States,* 521 U.S. 898, (1997); *New York v. United States*, 505 U.S. 144, 155 (1992). This, too, separates the paramountcy cases from cases involving aboriginal rights.

Finally, the *Eyak I* panel mistakenly overlooked the fact that Congress has expressly protected the Villages' aboriginal rights in the OCS, whereas the States' claims in the paramountcy cases were not similarly protected. This is an important, indeed, dispositive distinction because Congress ultimately has the authority to grant or preserve rights in the OCS that would otherwise offend federal paramountcy. *See Maine*, 420 U.S. at 524-25.[12]

---

[12]   A prime example of this principle is the Submerged Lands Act of 1953, 43 U.S.C. §§ 1301-15, whereby Congress gave coastal states ownership of the seabed

The plain language and legislative histories of the Outer Continental Shelf

Lands Act (OCSLA), the Submerged Lands Act (SLA), and the Magnuson

Fisheries Conservation and Management Act (Magnuson Act) clearly show

Congress' intent to protect the Villages' aboriginal rights.  For example, both the

OCSLA and SLA have savings clauses preserving any pre-existing rights, such as

aboriginal rights, in the OCS.  *See* 43 U.S.C. §§ 1301-15, 1342.  The House

Report on the OCSLA explains:

> [The Act] asserts Federal jurisdiction and control over the Continental
> Shelf areas beyond original State boundaries, thus bringing the lands
> and resources within such areas into the same legal status as those
> acquired by the United States through cession or annexation; in the
> alternative, such lands and resources are subject to the doctrine of
> discovery.  Adherence to the policy heretofore observed in
> connection with similar lands and resources brought under national
> dominion requires, as a matter of policy and law, that the property
> rights of individuals in and to such lands and resources be recognized
> and confirmed.

H.R. Rep. No. 695, 83rd Cong., 1st Sess., *reprinted in* 1953 U.S.C.C.A.N. 1395,

1411 (emph. added); *see also* D. Rep. No. 411, 83rd Cong., 1st Sess. at 14 (1953)

("Section 14 is a 'Savings Clause,' in that it protects any rights in the [OCS] area

that may have been acquired prior to the effective date of the Act.").

The Magnuson Act similarly expresses Congressional intent to preserve pre-

_____

and mineral resources beneath a three-mile belt of the territorial sea.  *See Maine*,
420 U.S. at 524-25.

-13-

existing aboriginal rights in the OCS: Sections 1853(a)(1)(C) and 1854(c)(1) of the Magnuson Act prohibit the Secretary from implementing the Act in a manner that is inconsistent "with any other applicable law." These provisions encompass aboriginal rights, which have been recognized under federal common law for more than 200 years. *Oneida*, 414 U.S. at 666-67. Indeed, this Circuit has specifically held that Indian fishing rights fall within the purview of "other applicable law" and are thus protected by the Magnuson Act. *See Parravano v. Babbitt*, 70 F.3d 539, 544 (9th Cir. 1995). Finally, the legislative history of the Magnuson Act emphasizes that the Act "should not be construed to effect the fishing rights of Native Americans, whether established by treaty *or any other law*." S. Rep. No. 416, 94th Cong., 1st Sess. at 36 (1975) (emph. added).

For the foregoing reasons, *Eyak I*'s holding that the Native Villages' claims of aboriginal hunting and fishing rights in the OCS are barred by the federal paramountcy doctrine is in direct conflict with *Gambell III's* holding that the federal government's paramount interests in the OCS do not extinguish aboriginal hunting and fishing rights. Under this Circuit's precedent, "[a] panel faced with [an irreconcilable] conflict must call for en banc review, which the court will normally grant unless the prior decisions can be distinguished." *Antonia v. Wards Cove Packing Co.*, 810 F.2d 1477, 1479 (9th Cir. 1987) (en banc), *cert. denied*,

485 U.S. 989 (1988).

## II. THE EXTRAORDINARY IMPORTANCE OF THIS CASE UNDERSCORES THE NEED FOR HEARING EN BANC.

This case will effectively determine the aboriginal hunting and fishing rights of over 50 Alaska Native coastal Villages. The general question of whether Alaska tribes may hold aboriginal hunting and fishing rights in the OCS has been in litigation for over twenty years, producing six published opinions to date in the *Gambell* and *Eyak* litigation. It is time for "some authoritative resolution of the aboriginal claims to rights in the [OCS]". *Nome Eskimo Community v. Babbitt*, 67 F.3d 813, 816 (9th Cir. 1995). The undeniable importance of this case underscores the need for hearing *en banc*.

### CONCLUSION

For the foregoing reasons, this Court should grant hearing en banc.[13]

---

[13] In the event this Court grants *en banc* review, appellants also respectfully request that the parties be afforded the opportunity to submit additional briefing.

Respectfully submitted,

Lawrence Aschenbrenner
Attorney at Law
601 Vine Street
Anchorage, Alaska 99501
(907) 276-9376

Heather Kendall-Miller
Natalie Landreth
Native American Rights Fund
420 L Street, Suite 505
Anchorage, Alaska 99501
(907) 276-0680

Goriune Dudukgian
James J. Davis Jr.
Alaska Legal Services Corporation
1016 West Sixth Avenue, Suite 200
Anchorage, Alaska 99501
(907) 279-7417
*Counsel for Plaintiff-Appellants*
*Native Village of Eyak, et al.*

Carol Daniel
Attorney at Law
8141 Alatna Ave.
Anchorage, Alaska 99507
(907) 529-6651
*Of Counsel to Appellants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19th day of February, 2004, he served the foregoing upon all persons required to be served by United States first-class mail, postage prepaid, addressed as follows:

Goriune Dudukgian
James J. Davis, Jr.
Alaska Legal Services Corporation
1016 West Sixth Ave. Suite 200
Anchorage, AK 99501

THOMAS L. SANSONETTI
BRUCE LANDON
WILLIAM B. LAZARUS
DAVID C. SHILTON
Attorneys
U.S. Department of Justice
P.O. Box 23795
Washington, D.C. 20026
(202) 514-5580

Vince Pangan
Legal Administrative Assistant